DiConza Traurig Magaliff LLP
630 Third Avenue – 7th Floor
New York, NY 10017
212.682.4940
Howard P. Magaliff

*Proposed Counsel for the Debtors*

**Hearing Date and Time:**
**February 6, 2013 at 10:00 a.m.**

**Objection Deadline:**
**February 1, 2013 at 5:00 p.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| MAXWELL S. PFEIFER and | : | Case No. 12-13852 (ALG) |
| MYRNA J. PFEIFER, | : | |
| | : | |
| Debtors. | : | |

-------------------------------------------------------------x

## NOTICE OF HEARING OF DEBTORS' APPLICATION FOR ORDER
## (i) AUTHORIZING THE RETENTION AND SUBSTITUTION
## OF DICONZA TRAURIG MAGALIFF LLP AS COUNSEL FOR
## THE DEBTORS, EFFECTIVE AS OF JANUARY 1, 2013, AND (ii)
## AUTHORIZING THE DEBTORS TO PAY A POST-PETITION RETAINER

   **PLEASE TAKE NOTICE** that a hearing to consider the *Application for Order (i) Authorizing the Retention and Substitution of DiConza Traurig Magaliff LLP as Counsel for the Debtors, Effective as of January 1, 2013, and (ii) Authorizing the Debtors to Pay a Post-Petition Retainer* (the "Application"), will be held before the Honorable Allan L. Gropper, United States Bankruptcy Judge, in his Courtroom, Room 617, One Bowling Green, New York, New York on February 6, 2013 at 10:00 AM.

   **PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the Application must be made in writing, conform to the Federal Rules of Bankruptcy Procedure and be filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties in interest, on a 3.5 inch disk, in text-searchable Portable Document Format (PDF), Word, Wordperfect or any other Windows-based word processing format (in either case, with a hard copy delivered to Chambers), and be served upon: (i) DiConza Traurig Magaliff LLP, proposed counsel for the Debtors, 630 Third Avenue, 7th Floor, New York, NY 10017, Attn: Howard P. Magaliff, Esq.; and (ii) Office of the United States Trustee, 271 Cadman Plaza East, Suite 4529, Brooklyn, NY 11201, Attn: Richard Morrissey, Esq., so as to be actually received no later than February 1, 2013 at 5:00 PM. Only objections made in writing and timely filed and received will be considered by the Bankruptcy Court at the hearing.

**[signature on next page]**

Dated:   New York, New York          DICONZA TRAURIG MAGALIFF LLP
       January 14, 2013                Proposed Counsel for the Debtors
                                     By:

                                   /s/ Howard P. Magaliff
                                   HOWARD P. MAGALIFF
                                   630 Third Avenue – 7th Floor
                                   New York, New York 10017
                                   212.682.4940
                                   *hmagaliff@dtmlawgroup.com*


To:   United States Trustee
      Counsel for Secured Creditors
      All Notice of Appearance Parties

DiConza Traurig Magaliff llp
630 Third Avenue – 7th Floor
New York, NY 10017
212.682.4940
Howard P. Magaliff

Hearing Date and Time:
February 6, 2013 at 10:00 a.m.

Objection Deadline:
February 1, 2013 at 5:00 p.m.

*Proposed Counsel for the Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                         :
                                               :         Chapter 11
MAXWELL S. PFEIFER and                         :         Case No. 12-13852 (ALG)
MYRNA J. PFEIFER,                              :
                                               :
                            Debtors.           :
---------------------------------------------------------------x

## DEBTORS' APPLICATION FOR ORDER (i) AUTHORIZING THE RETENTION AND SUBSTITUTION OF DICONZA TRAURIG MAGALIFF LLP AS COUNSEL FOR THE DEBTORS, EFFECTIVE AS OF JANUARY 1, 2013, AND (ii) AUTHORIZING THE DEBTORS TO PAY A POST-PETITION RETAINER

TO THE HON. ALLAN L. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:

Maxwell S. Pfeifer and Myrna J. Pfeifer (collectively, the "Debtors") respectfully submit this application for an order authorizing the retention and substitution of DiConza Traurig Magaliff LLP (the "DTM Firm") as their general bankruptcy counsel, effective as of January 1, 2013. In support of this Application, the Debtors state:

### Background

1.     On September 9, 2012 (the "Petition Date"), the Debtors filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") with this Court. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.     No trustee or creditors' committee has been appointed in this case.

3.      Leslie N. Reizes, Esq. of Reizes Law Firm, Chartered in Boynton Beach, Florida currently represent the Debtors.  No order has been entered authorizing this retention.

4.      On December 30, 2012, Mr. Reizes filed a motion to withdraw as attorney for the Debtors [ECF doc. # 49].  Mr. Reizes stated at paragraph 4:

> Debtors have advised they are seeking to engage other counsel and another accountant but to date have not been successful in engaging local New York counsel and a new accountant.

A hearing on the motion was held on January 8, 2013, and the motion was, approved.

5.      The Debtors have selected the DTM Firm as their New York counsel, and the DTM Firm has agreed to be substituted as counsel on the terms and conditions set forth in this Application.[1]  For the reasons set forth below, the Debtors request that the Court approve the retention of the DTM Firm and authorize the Debtors to pay a post-petition retainer in the amount of $50,000.

## Relief Requested

6.      The Debtors request the entry of an order, in the form attached as Exhibit 3, authorizing them to retain the DTM Firm and to pay a retainer, pursuant to sections 327(a), 328(a) and 363(b) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure.

**A.      Services Required**

7.      A review of the docket in this case shows that numerous matters, many of them contested, are pending that require the immediate services of experienced counsel.  Among these are the following:

(a)      Motion for relief from stay filed by Nissan Infiniti LT [ECF doc. # 24];

---

[1]      The Debtors have also selected the firm of Davis, Graber, Plotzker & Ward, LLP ("DGPW") as accountants, and a separate application will be filed to authorize the retention of that firm.

2

      (b)      Motion for relief from stay filed by E.R. Holdings LLC [ECF doc. # 32];

      (c)      Motion for relief from stay, or in the alternative for adequate protection filed by Ridgewood Savings Bank [ECF doc. # 38];

      (d)      Motion for relief from stay filed by Hudson Valley Bank N.A. [ECF doc. # 44]; and

      (e)      Complaint against Maxwell Pfeifer [adv. pro. # 12-02074], *inter alia*, objecting to his discharge under section 727 of the Bankruptcy Code and seeking the non-dischargeability of a debt pursuant to section 523(a)(2) of the Bankruptcy Code, filed by Pre-Settlement Finance, LLC [ECF doc. # 46] (the "PSF Adversary Proceeding").

8.      Hudson Valley Bank has also filed a motion seeking authority to examine the Debtors pursuant to Bankruptcy Rule 2004 [ECF doc. # 27].

9.      The Court has scheduled an evidentiary hearing on E.R.'s motion for February 14, 2013 at 2:30.

10.      The DTM Firm has agreed to be retained as counsel for the Debtors to perform all necessary and required series, including to:

      (a)      Respond to the various motions that have been filed, and negotiate with representatives of the moving creditors about adequate protection stipulations if appropriate;

      (b)      Prepare for and conduct the evidentiary hearing on E.R.'s motion;

      (c)      Prepare applications to retain accountants and an appraiser for the Bronx property;

      (d)      Represent Maxwell Pfeifer in the PSF Adversary Proceeding;

      (e)      Defend the Debtors at Bankruptcy Rule 2004 examinations;

3

(f)     Advise and assist the Debtors with the preparation and fil-
        ing of monthly operating reports;

(g)     Take necessary action to protect and preserve the Debtors'
        estates;

(h)     Advise the Debtors of their rights, powers, and duties as
        debtors in possession under chapter 11 of the Bankruptcy
        Code;

(i)     Prepare on behalf of the Debtors, motions, applications,
        amendments to schedules, answers, orders, reports and pa-
        pers necessary to the administration of the estate;

(j)     Advise the Debtors in reviewing, estimating, and resolving
        claims asserted against the estates;

(k)     Advise the Debtors about the possible sale of certain of their
        properties;

(l)     Prepare and file a chapter 11 plan and disclosure statement;

(m)     Appear before this Court and any appellate courts to protect
        the interests of the Debtors and their estates; and

(n)     Perform other necessary legal services and provide other
        necessary legal advice to the Debtors in connection with
        their chapter 11 cases.

11.     Maxwell Pfeifer first contacted the DTM Firm in late December

2012 to discuss the possibility of retaining the firm as substitute chapter 11 counsel.  The

DTM Firm reviewed the docket and pending matters, reviewed the petition and sched-

ules and spoke with Mr. Reizes to educate itself about the case, the services that would

be required and the timing.  After satisfying itself that there were no conflicts with the

proposed representation, the DTM Firm informed Mr. Pfeifer that it would be willing to

represent the Debtors, subject to and contingent upon the Court approving the payment

of a post-petition retainer in the amount of $50,000, to be applied to fees and expenses

as approved by the Court.  Mr. Magaliff also advised that his new firm might in the fu-

ture seek the approval of a monthly compensation order consistent with the local orders

4

and practices of this Court if appropriate under the circumstances at the time. The Debtors have agreed to these terms of the DTM Firm's retention.

12.     During the first week in January, Mr. Magaliff spoke with each of the attorneys for the moving creditors to advise that the Debtors would be seeking to retain new counsel, and to discuss potential resolution of the motions and adequate protection. Mr. Magaliff requested that the creditors adjourn their motions for a short time to maintain the status quo until new counsel was retained and could address the issues more fully. Counsel for Ridgewood, Nissan and Hudson Valley Bank agreed to adjourn the hearing on their motions until February; ER Holdings did not.

13.     Howard Magaliff of the DTM Firm appeared at the hearing on January 8 to advise the Court of the current status if the case and the immediate tasks that the DTM Firm will address if its retention is approved.

**B.     Qualifications of the DTM Firm**

14.     The DTM Firm specializes in the practice of bankruptcy and corporate restructuring, including bankruptcy and general commercial litigation, and insolvency law. The members of DTM have represented chapter 11 debtors, committees and trustees in numerous cases, including *In re Finlay Enterprises, Inc., et al.*, Case No. 09-14873 (JMP); *In re Motors Liquidation Company, f/k/a General Motors Corp., et al.*, Case No. 09-50026 (REG); *In re Old Carco LLC (f/k/a Chrysler LLC), et al.*, Case No. 09-50002 (AJG); *In re Tronox Inc., et al.*, Case No. 09-10156 (ALG); *In re Thelen LLP*, Case No. 09-15632 (ALG); *In re Frontier Airlines Holdings, Inc. et al.*, Case No. 08-11298 (RDD); *In re Diet Channel Network, Inc.*, Case No. 08-10396 (MG); *In re Broad Street Advisors, LLC*, Case No. 08-14910 (BRL); *In re Fortunoff Fine Jewelry and Silverware, LLC*, Case No. 08-10353 (JMP); *In re SKM Gourmet Products, Ltd.*, Case No. 07-10566 (REG); *In re Delphi Corp., et al.*, Case No. 05-44481 (RDD); *In re Enron Corp., et al.*, Case No. 01-16034 (AJG); *In re Saint Vin-*

*cents Catholic Medical Centers of New York d/b/a Saint Vincent Catholic Medical Centers, et al.*, Case No. 05-14945 (ASH); *In re Tower Automotive, Inc.*, Case No. 05-10578 (ALG); *In re SK Global America, Inc.*, Case No. 03-14625 (RDD); *In re Allegiance Telecom, Inc.*, Case No. 03-13057 (RDD); *In re NRG Energy, Inc.*, Case No. 03-13024 (PCB); *In re Guilford Mills, Inc., et al.*, Case No. 02-40667 (BRL); *In re Enron Corp., et al.*, Case No. 01-16034 (AJG); and *In re Ames Department Stores*, Case No. 01-42217 (REG).

15.    The DTM Firm is willing to act in these chapter 11 cases and render the necessary professional services as attorneys for the Debtors under a general retainer. To the best of the Debtors' knowledge, the attorneys of the DTM Firm do not have any connection with or any interest adverse to the Debtors, their creditors or any other party in interest, as set forth in the Declaration of Howard P. Magaliff dated January 14, 2012 (the "Magaliff Declaration"), attached as Exhibit 1.  The DTM Firm is not a creditor of the Debtors.  As such, the DTM Firm is a "disinterested person," as that phrase is defined in section 101(14) of the Bankruptcy Code and as modified by section 1107(b) of the Bankruptcy Code.

16.    The DTM Firm has represented to the Debtors that it has not represented and will not represent any parties other than the Debtors in their chapter 11 cases or in connection with any matters that would be adverse to the Debtors arising from, or related to, their cases.[2]

17.    The Debtors have been informed that the DTM Firm will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if

---

[2]    The Debtors have been advised that on about February 4, 2013, Howard P. Magaliff, the partner at the DTM Firm with primary responsibility for this engagement, will be joining a new firm.  Mr. Magaliff has informed the Debtors that his new firm does not have any known or identifiable conflicts.  If possible, the Debtors would have waited until February to seek retention of Mr. Magaliff's new firm.  However, since the start date of the new firm's operations has not been firmly established, and because Mr. Reizes has withdrawn as counsel and the Debtors' need for new counsel is pressing, the Debtors have requested, and Mr. Magaliff has agreed, to seek retention now, and to seek substitution of the new firm in February.

any new relevant facts or relationships are discovered, the DTM Firm will supplement its disclosure to this Court.

### C.    A Post-Petition Retainer is Appropriate

18.    "The payment of a post-petition retainer, while generally not looked upon with favor by bankruptcy courts, is not prohibited by the Bankruptcy Code.  The Bankruptcy Code does not dictate a strict and rigid framework for professionals' compensation." *In re Jefferson Business Center Assoc.*, 135 B.R. 676, 679 (Bankr. D. Colo. 1992).  The *Jefferson Business Center* court stated:

> *§ 328. Limitation on compensation of professional persons.*
>
> (a)  The trustee … with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title … on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis … 11 U.S.C. § 328(a).  Rather, the provisions for employment and payment of a debtor's counsel in Chapter 11 are flexible and practical.  11 U.S.C. §§ 327-331 and 503(b)(2).  [fn. omitted].  A determination of whether, and in what amount, a retainer should be paid is best left to the parties and the discretion of the Court.  Such a determination must be made on a case-by-case basis.  In that process, "the burden to establish that proposed terms and conditions of professional employment proposed in a bankruptcy case are reasonable is on the moving party."  *In re NBI, Inc.*, 129 Bankr. 212, 219 (Bankr. D.Colo. 1991).
>
> In determining whether a post-petition retainer in Chapter 11 is justified, the Court must consider several recognized factors, [fn. omitted] plus special factors which include, but are not necessarily limited to: (1) the retainer's economic impact on the debtor's ongoing business operation; (2) the retainer's economic impact on the ability of the debtor to reorganize; (3) the amount and reasonableness of the retainer; (4) the reputation of debtor's counsel; and (5) the ability of debtor's counsel to disgorge such payments at the conclusion of the case should this Court determine that the fees paid to counsel are not justified.  Further, the Court should also take into account, particularly under the circumstances of the case before it, the fact that the Debtor's current bankruptcy counsel is substitute counsel for the Debtor and has recently established a new law practice.  Coupled with these considerations in weighing the propriety of a

7

> post-petition retainer is this Court's belief that competent counsel is imperative for a debtor to successfully attempt reorganization in Chapter 11.

*Jefferson Business Center*, 135 B.R. at 679-80; *see also In re Troung*, 259 B.R. 264, 268 (Bankr. D.N.J. 2001).

19.    The Debtors submit that the current circumstances warrant payment of a post-petition retainer to the DTM Firm under the preceding factors.

20.    First, the Debtors understand that if they had hired the DTM Firm pre-petition, they would have paid a retainer to cover pre-petition services to prepare for the filing, with the balance to be applied to the DTM Firm's administrative fees earned post-petition, which the Debtors understand is a usual practice of the DTM Firm.  The Debtors do not believe that the DTM Firm should be treated differently merely because it has agreed to come into the case post-petition faced with a number of pressing issues, the resolution of which are critical to a successful reorganization.  For instance, the Bronx property represents potentially the Debtors' most valuable asset.  If ER Holdings is granted relief from the stay, significant value can be lost for creditors.  This is an urgent matter that requires immediate attention, as the Court has scheduled an evidentiary hearing on February 14.

21.    Turning to the *Jefferson Business Center* factors, the Debtors believe they are satisfied in this case.  Although monthly operating reports have not been filed yet,[3] the Debtors' DIP account statement reflects a balance of $199,147.74 as of December 31, 2012.  *See* Exhibit 2 attached.  Mr. Pfeifer expects in the near future to receive legal referral fees of approximately $80,000, and there are other pending cases for which he anticipates that fees will be paid.  Additionally, the Debtors anticipate that they will sell, either as part of a plan or during the case, non-exempt assets including the Bronx prop-

---

[3]    This is another matter that the DTM Firm, along with DGPW, will address promptly.

8

erty, and at least one of the condominiums in Riverdale that they own, and will pursue all reasonable available claims if determined to be in their best interests. The Debtors believe they will have the wherewithal to fund a confirmable plan; they require competent and experienced counsel to guide them through the process.

22.     The Debtors believe that the amount of the retainer is appropriate in the particular circumstances of the case. The Debtors understand that the DTM Firm, and after February Mr. Magaliff's new firm, will be devoting substantial time and effort to this case to properly position the case administratively and to enable the Debtors to confirm a plan; there is a substantial amount of work to do. The Debtors believe that they have assets sufficient to confirm a plan. The Debtors agreed to pay the retainer to minimize the risk of non-payment to Mr. Magaliff's firm in consideration of the services to be provided.

23.     The DTM Firm is a knowledgeable and experienced firm whose lawyers regularly practice in this Court. The Debtors believe that the firm and its members have an excellent reputation representing Debtors in chapter 11 cases.

24.     The Debtors believe that the last *Jefferson* factor – disgorgement – is not relevant in these circumstances. There is no practical difference between drawing against a pre-petition retainer for fees and one given post-petition. Final fees are always subject to the standards of section 330 of the Bankruptcy Code, and the possibility of disgorgement is always present. The Debtors will have a much clearer picture of their case, and the direction it will take, after E.R.'s motion is resolved. Payment of a retainer will at least ensure that the Debtors have competent representation during the next critical weeks of the case.

25.     The *Troung* court's observation when it approved counsel's post-petition retainer in that case is particularly germane here:

9

> [B]y retaining counsel, the debtors … will gain the advice
> and guidance which will increase their prospect of reorgani-
> zation. … [T]he specific amount of the retainer is not ex-
> traordinary when balanced against the services which must
> be rendered. … [I]t is clear from the examination of the rec-
> ord that while this case involves an individual debtor rather
> than a corporation, it has a level of complexity that demands
> experienced bankruptcy counsel.  Proposed counsel is an
> experienced bankruptcy practitioner and in measuring facts
> of this case against the criteria set forth in *Jefferson*, the Court
> finds that the complexity of this case and the need for coun-
> sel to cure the deficiencies in the case and to devise a feasible
> plan of reorganization warrant the payment of a post-
> petition retainer.  Finally, counsel is not requesting that he
> be permitted to draw against the retainer prior to allowance
> of compensation by the Court.  Thus, the Court's ability to
> oversee payment of fees is fully preserved.

*In re Truong*, 259 B.R. at 268.

26.    Section 328(a) of the Bankruptcy Code provides that "[t]he trustee … with the court's approval, may employ or authorize the employment of a profession-al person under section 327 or 1103 of this title … on any reasonable terms and condi-tions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis …" 11 U.S.C. § 328(a).  Section 363(b) authorizes the Debtors to use assets of the estate, other than in the ordinary course of business – here, to pay the retainer – after notice and a hearing.

### Notice

27.    The Debtors have given notice of this Application and the hearing thereon to the United States Trustee, counsel for the secured creditors, and the 20 larg-est unsecured creditors.  The Debtors submit that such notice is sufficient under the cir-cumstances.

28.    The Debtors have not made a prior application for the relief re-quested to this or any other Court.

**WHEREFORE**, the Debtors request the entry of the attached order, and

such other and further relief as is appropriate.


Dated:   Riverdale, New York
         January 14, 2013

                                        /s/ Maxwell S. Pfeifer
                                        MAXWELL S. PFEIFER, Debtor


                                        /s/ Myrna J. Pfeifer
                                        MYRNA J. PFEIFER, Debtor


DICONZA TRAURIG MAGALIFF LLP
Proposed Counsel for the Debtors
By:

/s/ Howard P. Magaliff
HOWARD P. MAGALIFF
630 Third Avenue – 7th Floor
New York, New York 10017
212.682.4940
*hmagaliff@dtmlawgroup.com*

**EXHIBIT 1**

DiConza Traurig Magaliff LLP
630 Third Avenue – 7th Floor
New York, NY 10017
212.682.4940
Howard P. Magaliff

*Proposed Counsel for the Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:                                                  :
                                                        :          Chapter 11
MAXWELL S. PFEIFER and                                  :          Case No. 12-13852 (ALG)
MYRNA J. PFEIFER,                                       :
                                                        :
                              Debtors.                  :
------------------------------------------------------------------x

## DECLARATION OF HOWARD P. MAGALIFF

I, Howard P. Magaliff, declare pursuant to 28 U.S.C. § 1746 that the fol-

lowing is true to the best of my knowledge, information and belief:

1.      I am a partner of DiConza Traurig Magaliff LLP (the "DTM Firm"),

located at 630 Third Avenue, 7th Floor, New York, New York 10017.  I am a member in

good standing of the Bar of the State of New York and am admitted to practice in the

Southern District of New York.

2.      I am in all respects competent to make this Declaration in support

of the application (the "Application")[1] of Maxwell S. Pfeifer and Myrna J. Pfeifer (collec-

tively, the "Debtors") for an order authorizing the retention and substitution of the

DTM Firm as their general bankruptcy counsel, effective as of January 1, 2013.  Unless

otherwise stated in this Declaration, I have personal knowledge of the facts set forth

herein.

---

[1]   Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the
Application.

3.      To the best of my knowledge, after due inquiry, neither I, my firm, nor any partner or counsel of my firm has any connection with or any interest adverse to the Debtors, their creditors or any other party in interest.  The DTM Firm, while employed by Debtors, will not represent any individual creditor in any capacity in connection with this case.  I know of no reason why this firm cannot act as the Debtors' counsel in this case.

4.      Additionally, neither I, my firm, any member of my firm or any attorney who is "of counsel" to the firm, insofar as I have been able to ascertain:

a.      is a relative of the Debtors;

b.      is a partner in a partnership in which either of the Debtors is a general partner;

c.      is an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code;

d.      presently represents a creditor of the Debtors, or a person otherwise adverse or potentially adverse to the Debtors or their estate, on any matter that is related to the Debtors or their estate; or

e.      has any other interest, direct or indirect, which may affect or be affected by the proposed representation.

5.      To the best of my knowledge and based upon the information presently available to me, the DTM Firm is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

6.      The DTM Firm has agreed to act as counsel to the Debtors on a general retainer, and to be compensated on an hourly fee basis for services rendered and be reimbursed for its actual expenses incurred in connection with its services, in ac-

2

cordance with sections 327(a), 328(a), 330(a) and 331 of the Bankruptcy Code, the Feder-
al Rules of Bankruptcy Procedure, the Local Bankruptcy Rules and any orders of the
Bankruptcy Court.  The current hourly rates of the firm are $445-$550 for partners, $375-
$505 for counsel, and $100-$195 for paralegals.

7.      I have advised the Debtors that on about February 4, 2013, I will be
joining a new firm.  To the best of my knowledge, after due inquiry, the members of my
new firm do not have any known or identifiable conflicts.  If possible, I would have
waited until February to be retained.  However, since the start date of my new firm's
operations has not been firmly established, and because the Debtors need counsel, the
Debtors have requested, and I have agreed, to seek retention now, and to seek substitu-
tion of the new firm in February.

8.      Further, because of the circumstances of the case and the services
that will be required especially over the next several weeks, I informed Mr. Pfeifer that
the DTM Firm would be willing to represent the Debtors only if the Court approves the
payment of a post-petition retainer in the amount of $50,000, to be applied to the DTM
Firm's fees as approved by the Court.  I also advised Mr. Pfeifer that depending on cir-
cumstances in the future, my firm might seek the approval of a monthly compensation
order consistent with the local orders and practices of this Court.  The Debtors have
agreed to these terms of my firm's retention.

9.      The DTM Firm shall apply to the Court for allowance of compensa-
tion and reimbursement of expenses in accordance with applicable provisions of the
Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and Orders of the
Court.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   New York, New York
         January 14, 2013

                                        /s/ Howard P. Magaliff
                                        Howard P. Magaliff

**EXHIBIT 2**



# TD Bank

### America's Most Convenient Bank®

MAXWELL S PFEIFER
MYRNA J PFEIFER
DIP CASE# 12-13852 SDNY
2727 PALISADE AVE APT 8J
BRONX NY          10463

039 / Chapter 11 Checking          4272011069

| | | |
|---|---|---|
| Statement Beginning Balance As Of 11/22/2012 | | $199,114.58 |
| Plus | Deposits and Other Credits | $38,450.95 |
| Minus | Checks and Other Debits | $42,602.06 |
| Statement Balance As Of 01/10/2012 | | $194,997.47 |

## Transactions By Date

| Date | Description | | Debit | Credit | Balance |
|---|---|---|---|---|---|
| 12/24/2012 | | DEBIT | $800.00 | | $198,345.58 |
| 12/24/2012 | 1092 | CHECK CASHED | $700.00 | | $197,645.58 |
| 12/24/2012 | | VISA DDA PUR 450705   MARIOS | $92.12 | | $197,553.46 |
| 12/24/2012 | | VISA DDA PUR 463923   U S FUND FOR UN | $25.00 | | $197,528.46 |
| 12/24/2012 | 1067 | CHECK | $25.00 | | $197,503.46 |
| 12/26/2012 | | ADP TX/FINCL SVC ADP - TAX | $720.01 | | $196,783.45 |
| 12/26/2012 | | ADP TX/FINCL SVC ADP - TAX | $375.60 | | $196,407.85 |
| 12/27/2012 | | ADP TX/FINCL SVC ADP - TAX | $478.41 | | $195,929.44 |
| 12/27/2012 | | VISA DDA PUR 469216   SUPER FUEL CORP | $432.10 | | $195,497.34 |
| 12/27/2012 | | VISA DDA PUR 419304   GERARD BOLLEI S | $250.80 | | $195,246.54 |
| 12/27/2012 | | ADP TX/FINCL SVC ADP - TAX | $206.18 | | $195,039.36 |
| 12/27/2012 | | VISA DDA PUR 469216   ATT BILL PAYMEN | $116.88 | | $194,922.48 |
| 12/27/2012 | | ADP PAYROLL FEES ADP - FEES | $29.46 | | $194,893.02 |
| 12/28/2012 | 1091 | CHECK CASHED | $500.00 | | $194,393.02 |
| 12/28/2012 | | DDA PURCHASE E MC PROC NMAC | $339.50 | | $194,053.52 |
| 12/28/2012 | | VISA DDA PUR 469216   RIVERDALE TIFFA | $45.00 | | $194,008.52 |
| 12/31/2012 | | SNT DOP - TP AL - N - MONT | $5,840.95 | | $199,849.47 |
| 12/31/2012 | | ADP TX/FINCL SVC ADP - TAX | $701.73 | | $199,147.74 |

**EXHIBIT 3**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:                                                            :
                                                                  :        Chapter 11
MAXWELL S. PFEIFER and                                            :        Case No. 12-13852 (ALG)
MYRNA J. PFEIFER,                                                 :
                                                                  :
                                      Debtors.                    :
------------------------------------------------------------------x

### ORDER (i) AUTHORIZING THE RETENTION AND SUBSTITUTION OF DICONZA TRAURIG MAGALIFF LLP AS COUNSEL FOR THE DEBTORS, EFFECTIVE AS OF JANUARY 1, 2013, AND (ii) AUTHORIZING THE DEBTORS TO PAY A POST-PETITION RETAINER

Upon the application dated January 14, 2013 (the "Application") of Maxwell S. Pfeifer and Myrna J. Pfeifer (collectively, the "Debtors"), for an order authorizing the retention and substitution of DiConza Traurig Magaliff LLP (the "DTM Firm") as their general bankruptcy counsel, effective as of January 1, 2013, and to authorize payment of a $50,000 retainer to the DTM Firm; and upon the Declaration of Howard P. Magaliff sworn to on January 14, 2013; and it appearing that sufficient notice of the Application has been given and that no further notice need be given; and the Court being satisfied that (i) the employment of the DTM Firm is necessary and in the best interest of the Debtors' estates, (ii) the DTM Firm has no interest adverse to the Debtors and their estates, and (iii) the DTM Firm is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and a hearing having been held on February 6, 2013 to consider the Application and after due deliberation, and sufficient cause appearing therefor; it is

**ORDERED** that the Application is granted and approved to the extent provided herein; and it is further

**ORDERED** that, pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Rule 2014 of the Federal Rules of Bankruptcy Procedure, the Debtors are authorized to retain the

DTM Firm under a general retainer as their attorneys in this chapter 11 case effective as of January 1, 2013; and it is further

**ORDERED** that, pursuant to 11 U.S.C. § 363(b), the Debtors be, and hereby are authorized and directed to pay to the DTM Firm a retainer of $50,000, to be applied to fees and expenses as approved by the Court; and it is further

**ORDERED** that the DTM Firm shall be compensated at its customary hourly rates in effect at the time its services are rendered, in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, the Local Bankruptcy Rules and orders of the Court, guidelines established by the Office of the United States Trustee, and other such procedures as may be established by order of this Court; and it is further

**ORDERED**, that ten business days' notice must be provided by the DTM Firm to the Debtors, the United States Trustee and any official committee prior to any increases in the rates set forth in the Application, and such notice must be filed with the Court; and it is further

**ORDERED**, that to the extent the Application or any other document is inconsistent with this Order, the terms of this Order shall govern.

Dated:   New York, New York
         February ___, 2013

_____
Allan L. Gropper
United States Bankruptcy Judge

NO OBJECTION:
Office of the United States Trustee

By:  /s/ Richard Morrissey
     Richard Morrissey
     Trial Attorney

2